**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARAH A. BULUT, *Plaintiff*, v. JPMORGAN CHASE BANK, N.A.; TRACY PAI MANAGEMENT LTD; RUMELIA CAPITAL; GLENRIDGE CAPITAL; GREY MOUNTAIN MANAGEMENT; DAVID CARTU; JOSHUA CARTU; JONATHAN CARTU; LEEAV PERETZ; NATI PERETZ; ABC CORPS. 1-10; and JOHN DOES 1-10, *Defendants*. | Civil Action No. 22-04276 OPINION |

**John Michael Vazquez, U.S.D.J.**

This matter arises out of an alleged scheme to sell fraudulent securities. Plaintiff Sarah A. Bulut sues various Defendants for their direct participation in the scheme (the "Binary Option Defendants"), and sues her credit card company, JPMorgan Chase Bank, N.A. ("Chase"), for negligence, negligent misrepresentation, violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-2 *et seq.*, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Currently pending before the Court is Chase's motion to dismiss. D.E. 6. The Court reviewed the parties' submissions[1] and decided the motion

---

[1] The submissions consist of Chase's motion to dismiss, D.E. 6 ("Br."); Plaintiff's opposition, D.E. 9 ("Opp."); and Chase's reply, D.E. 10 ("Reply").

without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Chase's motion is **GRANTED**.

I.   BACKGROUND[2]

Plaintiff first opened an account with Chase in September 1999. D.E. 1 ("Compl.") at ¶ 49. In or around April 2014, Plaintiff upgraded to a Chase Sapphire Preferred Visa Signature Credit Card ("Sapphire Card"). *Id.* ¶ 51. Two years after this upgrade, "Chase engaged in an advertising campaign which promoted 24/7 Fraud Monitoring and Zero Liability Protection for all cardholders, including those with a Sapphire Card." *Id.* ¶ 52. According to Plaintiff, this protection meant that "no Chase customer would be held responsible for unauthorized charges made on their cards or accounts." *Id.* ¶ 54. In the fall of 2016, Plaintiff alleges that she was contacted by the Binary Option Defendants who solicited her investment in certain securities known as "Binary Options." *Id.* ¶ 56. Plaintiff agreed to invest in the Binary Options and used her Sapphire Card to pay the Binary Option Defendants for that investment. *Id.* ¶ 67. Plaintiff

---

[2] The factual background is taken from Plaintiff's Complaint. D.E. 1. The Court also considered the Cardmember Agreement, D.E. 6-2, attached to Chase's motion because it is integral to the Complaint. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (explaining that when deciding a motion to dismiss under Rule 12(b)(6), a court may rely on "a document *integral to or explicitly relied* upon in the complaint" (emphasis in original) (citation omitted)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."). Plaintiff also brought a prior action making substantially similar allegations, and the Court considers filings in that case as matters of public record. *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 631-32 (3d Cir. 2018) (noting that a court may consider "matters of public record" at the motion to dismiss stage); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.").

claims that Chase's fraud protection "led her to feel comfortable utilizing her Sapphire Card" to purchase the Binary Options. *Id.* ¶ 55. "From the time of Plaintiff's first investment with the Binary Option Defendants until February 2017, Plaintiff's Sapphire Card was repeatedly and automatically debited based upon a misrepresentation by the Binary Option Defendants that her investment was real, earning, secure and could be withdrawn at any time." *Id.* ¶ 67. Plaintiff alleges that she gave the Binary Option Defendants $136,750.00 using her Sapphire Card. *Id.* ¶ 68. Plaintiff claims that "Chase benefitted from these consistent and regular transactions and charges by imposing fees on customers." *Id.* ¶ 78. Plaintiff alleges, however, that the investment was entirely fraudulent. *Id.* ¶¶ 56-71.

When Plaintiff learned that the investment was fraudulent, she unsuccessfully tried to withdraw her money from her account with the Binary Option Defendants. *Id.* ¶¶ 69-70. Plaintiff then turned to Chase and claims that she "believed that as a result of Chase's fraud protection coverage, and the fact that this was a scam, she would be protected and all or most charges would be reversed by applying charge-backs." *Id.* ¶ 73. According to Plaintiff, "[d]espite the promise of 24/7 fraud protection, Chase denied Plaintiff this benefit and advised her that there was no evidence of fraud, further alleging that the payments were for a service which was provided." *Id.* ¶ 74.

Plaintiff claims that "[t]hrough the existence of numerous customer complaints" and "numerous published articles and reports which detailed the binary option fraud scams," "Chase was on notice, and had been for some time, that the Binary Option Defendants were part of a scheme to defraud individuals." *Id.* ¶¶ 76-77. Plaintiff also claims that Chase knew that the Binary Option Defendants were not "registered with any United States regulatory agency and, if they took the time and made the effort to investigate," would have discovered that "all of the Binary Option Defendants were set up with one purpose—to defraud United States citizens." *Id.* ¶ 79. Plaintiff

claims that this information gave rise to a duty on Chase's behalf to "make a reasonable inquiry and perform adequate due diligence to prevent these frauds and misappropriations from taking place." *Id.* ¶ 80. Plaintiff further alleges that "[h]ad Chase acted with haste, through the monitoring of Plaintiff's accounts and adequate investigation thereafter, they could have prevented much of the fraudulent activity from taking place." *Id.* ¶ 83.

Chase instructed Plaintiff "to try and work it out with the Binary Option Defendants." *Id.* ¶ 81. The Binary Option Defendants "wrote to Plaintiff that she would be receiving credits to her account," and Plaintiff received "credits via her Chase Credit Card to her account until July 2017 in one thousand five-hundred-dollar ($1,500.00) increments." *Id.* ¶¶ 81-82. Plaintiff alleges "monetary damages of no less than $90,747.00." *Id.* ¶ 17. In her Opposition, Plaintiff claims to be "out of pocket the approximate sum" of $110,000.00. Opp. at 18.

As to Chase, Plaintiff claims that the allegations above constitute negligence (Second Count), negligent misrepresentation (Fourth Count), violation of the NJCFA (Fifth Count), breach of contract (Sixth Count), breach of the implied covenant of good faith and fair dealing (Seventh Count), and unjust enrichment (Eighth Count).[3] The present motion followed. D.E. 6.

## II.   STANDARD OF REVIEW

Chase moves to dismiss all counts asserted against them for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face

---

[3] Chase argues that the Court "lacks subject matter jurisdiction over [Plaintiff's] equitable claim for unjust enrichment because she has failed to plausibly allege the unavailability of a remedy at law." Br. at 23. Chase did not cite any binding authority for this point, and the Ninth Circuit case it did cite, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), did not concern subject matter jurisdiction. Moreover, the Federal Rules of Civil Procedure permit a plaintiff to plead in the alternative. Fed. R. Civ. P. 8(d).

when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (citation omitted). If, after viewing the allegations in the complaint in the manner most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010). "[T]he defendant bears the burden of showing that the plaintiff has not stated a claim." *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 n.4 (3d Cir. 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)). "When the basis for dismissal is a statute of limitations, it must be apparent from the face of the Complaint that the statute bars the claim." *Bd. of Educ. of the Twp. of Cherry Hill v. Human Resource Microsystems, Inc.*, 09-5766, 2010 WL 3882498, at *2 (D.N.J. Sept. 28, 2010) (citing *Brody v. Hankin*, 145 F. App'x 768, 771-72 (3d Cir. 2005)).

**III.     ANALYSIS**

Chase argues that all of Plaintiff's claims against it are time barred. The Cardmember Agreement ("CMA"), which governs Plaintiff's Sapphire Card, states "[t]his agreement and your account will be governed by federal law, as well as the law of Delaware, and will apply no matter where you live or use this account." D.E. 6-2 at 7. Defendant notes that under Delaware law, the statute of limitations for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation are three years, and the statute of limitations for negligence is two years. Br. at 12. As to Plaintiff's claim for violation of the NJCFA, Chase concedes that the statute of limitations is six years but argues that "the choice of law provision . . . precludes [Plaintiff] from brining such a New Jersey claim." *Id*. at 12-13. Plaintiff acknowledges that her claims would be barred under the Delaware statute of limitations, Opp. at 18, but argues that the choice of law provision is not applicable because enforcing that clause would be contrary to New Jersey public policy.

"A federal court sitting in diversity jurisdiction must apply the forum state's choice of law rules" to determine what law governs the substantive issues of a case. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). "New Jersey gives effect to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001) (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). "Absent a compelling sense of inequity or injustice, courts do not seek to reorder the contracts of private parties." *Instructional Sys.*, 614 A.2d at 149. New Jersey courts will only refuse to enforce a choice of law provision where

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be

> contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Sullivan v. Sovereign Bancorp., Inc.*, 33 F. App'x 640, 641 (3d Cir. 2002) (citing *Instructional Sys.*, 614 A.2d at 133).

In 2018, Plaintiff brought a prior action in this Court making substantially the same allegations as those made in this case. *See Bulut v. JP Morgan Chase Bank, N.A.*, No. 2:18-cv-09303 (D.N.J.) (the "Prior Action").[4] In the Prior Action, the Court twice enforced the choice of law clause in the CMA. Prior Action D.E. 20 at 8; *id.* D.E. 50 at 5 n.6. Nevertheless, given the parties extensive briefing on the application of the clause, the Court will consider the question again in light of the present arguments.

The CMA states "[t]his agreement and your account will be governed by federal law, as well as the law of Delaware, and will apply no matter where you live or use this account." D.E. 6-2 at 7. Plaintiff claims that "there is no substantial relationship, or any relationship whatsoever, between the parties or the transaction and Delaware." Opp. at 23. However, the CMA indicates that it is "an agreement between . . . the cardmember, and Chase Bank USA, N.A., a subsidiary of

---

[4] The Prior Action was initially filed on May 16, 2018. Prior Action D.E. 1. After the Court granted motions to dismiss the initial complaint and amended complaint, *id.* D.E. 20, 21, 50, 51, the parties entered a stipulation of dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), *id.* D.E. 56. The Court dismissed the Prior Action pursuant to the stipulation on May 29, 2020. *Id.* D.E. 57. Plaintiff filed a motion to reopen that case, *id.* D.E. 60, which the Court denied on April 25, 2022, *id.* D.E. 65. The Court noted that because the Prior Action "was voluntarily dismissed by the parties pursuant to Rule 41(a), 'the proper procedure is to require [Plaintiff] to file a new civil action rather than reopen an action that was deemed voluntarily dismissed.'" *Id.* at 4 (quoting *Baxter v. Atl. Care Main Pomona Hosp.*, No. 13-7876, 2015 WL 715012, at *1 (D.N.J. Feb. 19, 2015)). The Court observed, however, that it "appear[ed] that Plaintiff may be foreclosed from bringing her claims against Defendant in a new case" because of Delaware's statute of limitations, and thus analyzed, but ultimately rejected, Plaintiff's motion under Rule 60(b). *Id.* The current action was filed on June 27, 2022. D.E. 1.

JPMorgan Chase & Co." D.E. 6-2 at 3. Between 2016 and 2017, when the relevant conduct took place here, Chase Bank USA, N.A. was located in Delaware. *See* Office of the Comptroller of the Currency, Charter No. 23160 (Chase Bank USA, N.A.), https://occ.gov/institution-search/list?q=chase. Indeed, Plaintiff acknowledges that Chase has a relationship with Delaware. Opp. at 19-20. Thus, Delaware has a "substantial relationship to the parties or the transaction" here.[5]

Plaintiff argues that "public policy does not support enforcement of" the CMA's choice of law clause because Chase had "uneven and coercive bargaining power." Opp. at 16. Plaintiff cites *Copelco Capital, Inc. v. Shapiro*, 750 A.2d 773, 775 (N.J. App. Div. 2000), which noted that a forum selection clause would not be enforced in New Jersey if it was "the result of 'fraud or coercive bargaining power.'" Assuming this holding applies to choice of law provisions as well, the Complaint provides no basis to believe that the clause here was the result of fraud or coercion. Plaintiff only argues in conclusory fashion, without any factual support, that Chase has "uneven and coercive bargaining power." Opp. at 16. This argument amounts to a claim that credit card companies, or large corporations in general, cannot enforce choice of law provisions against consumers. That result is clearly foreclosed by New Jersey law. *See Instructional Sys.*, 614 A.2d at 149 ("Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy. . . . Absent a *compelling* sense of inequity or injustice, courts do not seek to reorder the contracts of private parties." (emphasis added) (citation omitted)); *Cohen v. Chase Bank, N.A.*, 679 F. Supp. 2d 582, 595 (D.N.J. 2010) ("This Court has found no indication that

---

[5] When Chase sent Plaintiff a copy of the CMA, as requested by Plaintiff, the return address was a Wilmington Delaware P.O. Box, further demonstrating Chase's relationship with that state. *See* D.E. 6-2 at 2.

choice-of-law clauses in contracts of adhesion, such as credit cardmember agreements, violate New Jersey public policy[.] . . . Accordingly, this Court predicts that, under New Jersey choice-of-law rules, the New Jersey Supreme Court would uphold the choice-of-law clause in the Agreement and apply Delaware law to the Agreement.").

Plaintiff also claims that it is unclear whether she was ever provided the CMA in the first place. Opp. at 16-17. In the Prior Action, Plaintiff, citing to the CMA, alleged breach of contract against Chase claiming that it "authorized and issued [the Sapphire Card] to Plaintiff pursuant to a cardholder agreement." Prior Action D.E. 1 ¶¶ 7, 55; *id.* D.E. 1-1; D.E. 6-2. Moreover, Plaintiff sues in this action on a breach of contract theory, claiming that "Plaintiff and Chase entered into a contract upon the opening of any and all accounts." Compl. ¶ 114. Having twice relied on the CMA to seek a legal remedy relating to purchases on her Sapphire Card, Plaintiff's claim—that she may not be bound by the terms of that agreement because it is unclear whether it was ever provided to her—ring hollow at best. *See also Ellin v. Credit One Bank*, No. 15-2694, 2015 WL 7069660, at *3 (D.N.J. Nov. 13, 2015) ("New Jersey case law indicates that the cardholder's use of the credit card alone is sufficient in proving that a valid contract compelling arbitration exists between the parties.").

Plaintiff also claims that the choice of law clause is inconspicuous, and thus cannot be enforced. Opp. at 17. Plaintiff relies on two Superior Court decisions: *Fairfield Leasing Corp. v. Techni-Graphics, Inc.*, 607 A.2d 703 (N.J. Super. Ct. 1992), and *Discover Bank v. Shea*, 827 A.2d 358 (N.J. Super. Ct. 2001). In the absence of precedent from the New Jersey Supreme Court on an issue, this Court "must predict how the Supreme Court of New Jersey would rule." *Hulmes v. Honda Motor Co.*, 924 F. Supp. 673, 678 (D.N.J. 1996). In making that decision, the Court *may* consider, but is not bound by, decisions of New Jersey state trial courts. *Id.*

In *Fairfield Leasing*, the plaintiff's suit arose out of the lease of a coffee machine. 607 A.2d at 703. The court found that such a case "comes within the province of the Uniform Commercial Code," which requires certain terms, such as warranty disclaimers, to be conspicuous. *Id.* at 706. Noting that the Appellate Division had previously extended the conspicuousness requirement to limitations of remedy, the court further extended it to choice of law provisions, finding that they are "at least as important as provisions limiting remedies." *Id.* at 707. Critically, however, the UCC, by its own terms, only "applies to transactions in goods," N.J.S.A. 12A:2-102, and "goods" is defined as "all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action," N.J.S.A. 12A:2-105. An agreement to extend credit does not fall within this definition, making the UCC inapplicable here. While *Discover Bank* applied *Fairfield Leasing*'s holding to a choice of law provision in a credit card agreement, it did so without any analysis of this critical limit on the UCC's applicability. 827 A.2d at 363-64. The Court sees no reason to believe that the New Jersey Supreme Court would apply the UCC's provisions to an agreement that does not come within the statutory scheme's purview. Thus, *Fairfield Leasing* and *Discover Bank* do not support finding the choice of law clause to be unenforceable. *See also Cohen*, 679 F. Supp. 2d at 591-92 (declining to follow *Discover Bank* and *Fairfield Leasing* because they were not "based on New Jersey Supreme Court precedent").

Even if conspicuousness were required to enforce a choice of law clause in a credit card agreement, the clause here would be sufficient. The UCC notes that "[w]hether a term is 'conspicuous' or not is a decision for the court," and defines "conspicuous" as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." N.J.S.A. § 12A:1-201b(10). The statute also specifically notes that a term is conspicuous

10

where it is "in contrasting type, font, or color to the surrounding text of the same size." *Id.* Here, the choice of law provision is in a table with a clear heading that reads "Governing Law," and the text of the choice of law clause is bolded, in contrast to the surrounding text. D.E. 6-2 at 7. Thus, the clause meets one of the statute's definitions for *per se* conspicuous terms, and the Court also finds that a reasonable person would have noticed it.

Plaintiff also argues, without any authority, that the CMA's choice of law provision cannot be enforced because in the Prior Action, Chase did not argue that Delaware law applied in their motions to dismiss. Opp. at 15. But Chase explicitly argued in that case Delaware law governed the breach of contract claim pursuant to the CMA in its motion to dismiss the initial complaint. Prior Action D.E. 9-1 at 16, n.7. Chase only agreed that it was unnecessary to undergo a choice of law analysis and that New Jersey law could apply because, at the time, there was no material difference between New Jersey and Delaware law—neither state's statute of limitations had run. *Id.* D.E. 15 at 9 n.4. Moreover, Plaintiff's brief in opposition to that motion explicitly acknowledged that argument. *Id.* D.E. 12 at 14, 17. The Court also twice addressed whether Delaware law applied and found that it did in both instances. *Id.* D.E. 20 at 7-8, D.E. 50 at 5 n.6. Given the expiration of Delaware's statute of limitations since that time, a material difference in law has arisen, giving Chase a reason to insist on the application of Delaware law in the present action. Thus, this argument falls short.

Plaintiff also claims that there is "no basis to enforce [the choice of law clause] when Chase has already breached the contract by failing to properly monitor Plaintiff's account." Opp. at 16. Plaintiff has not provided any authority, and the Court is not aware of any, holding that the terms of a contract may not be enforced once a Plaintiff alleges, or even proves, a breach of that contract. Thus, this argument is likewise rejected.

Plaintiff further argues that she voluntarily withdrew the Prior Action "acting with full reliance on the laws of New Jersey governing her case." Opp. at 22. As explained above, Plaintiff was in possession of the CMA which had a conspicuous choice of law clause indicating that Delaware law would apply. Chase argued in the Prior Action that Delaware law should apply pursuant to the CMA, Prior Action D.E. 9-1 at 16 n.7, Plaintiff explicitly responded to that argument, *id.* D.E. 12 at 14, 17, and the Court twice noted that Delaware law applied, *id.* D.E. 20 at 8, D.E. 50 at 5 n.6. Thus, when Plaintiff voluntarily dismissed the Prior Action, she made a strategic choice with full knowledge of the potential application of Delaware law.

Moreover, even assuming that New Jersey has a "materially greater interest" in this case than Delaware, and that New Jersey "would be the state of the applicable law in the absence of an effective choice of law by the parties," there is no reason to believe that applying Delaware law is "contrary to a fundamental policy" of New Jersey. *See Sullivan*, 33 F. App'x at 641 (citing *Instructional Sys.*, 614 A.2d at 133). Thus, neither exception to the application of a choice of law clause applies, and New Jersey choice of law rules demand that the parties' agreement be enforced. Delaware law governs the CMA and Plaintiff's account with Chase.

While Delaware law governs the CMA and Plaintiff's Chase account, the Court must still decide what *claims* fall within reach of the choice of law clause. Plaintiff's claims against Chase are negligence, negligent misrepresentation, violation of the NJCFA,[6] breach of contract, breach

---

[6] Plaintiff's NJCFA claim is dismissed not because of the statute of limitations (as is true for the remaining claims), but because the Court finds that New Jersey law is inapplicable to Plaintiff's allegations regarding her Chase account, which make up her NJCFA claim. *See Maniscalco*, 793 F. Supp. 2d at 710 (dismissing plaintiff's NJCFA claim because the court determined that New Jersey law did not apply to the action as a whole); *Atl. Capes Fisheries, Inc. v. Graves & Schneider Int'l, LLC*, No. 17-11479, 2018 WL 6716825, at *9 (D.N.J. Dec. 21, 2018) (noting that the NJCFA "does not apply here because of New Jersey's recognition of the parties' election of Washington's law in their choice of law provisions"). Even if Plaintiff could sue under the Delaware analogue to the NJCFA, that statute has a three-year statute of limitations, making such a claim futile. *See*

of the implied covenant of good faith and fair dealing, and unjust enrichment. Compl. Each of these claims arise out of charges on Plaintiff's Chase Sapphire Card. Each Count alleges that Chase promised fraud protection services as part of Plaintiff's account and that Chase failed to properly monitor the account and protect Plaintiff. The CMA indicates that the "agreement and your account will be governed by federal law, as well as the law of Delaware." D.E. 6-2 at 7. Thus, regardless of the particular legal theory, Delaware law (including its statutes of limitations) governs the claims because the CMA's choice of law clause is broad enough to reach all causes of action relating to the account, and each claim directly relates to Plaintiff's account with Chase. *See Sullivan*, 2001 WL 34883989, at \*6; *Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms.").

Plaintiff agrees that because Delaware law applies, and all of the conduct alleged took place in 2017 or earlier and thus falls outside of the statutes of limitations, her claims should be dismissed. Opp. at 18; *see Weyerhaeuser Co. v. Domtar Corp.*, 61 F. Supp. 3d 445, 451 (D. Del. 2014) (citing 10 Del. C. § 8106(a)) (three-year statute of limitations for breach of contract claims); *Homsey Architects, Inc. v. Nine Ninety Nine, LLC*, No. 4412, 2010 WL 2476298, at \*8 (Del. Ch. June 14, 2010) (citing 10 Del. C. § 8106) (three-year statute of limitations for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence and negligent misrepresentation); *Deputy v. Deputy*, No. 10874, 2020 WL 1018554, at \*51 (Del. Ch. Mar. 2,

---

*Eames v. Nationwide Mut. Ins. Co.*, No. 04-1324, 2006 WL 2506640, at \*4 (D. Del. 2006) (three-year statute of limitations for Delaware statutory consumer fraud claim).

2020) (three-year statute of limitations for unjust enrichment). Accordingly, Plaintiff's claims against Chase are time barred and dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant Chase's motion to dismiss, D.E. 6, is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: January 27, 2023

                                                                                            John Michael Vazquez, U.S.D.J.